**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

AMIN MOHAMMED,

              Petitioner,

   v.

WILLIAM P. BARR, Attorney General,

              Respondent.

No.   17-71638

Agency No. A095-715-501

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted July 10, 2020
Pasadena, California

Before: BALDOCK,[**] BERZON, and COLLINS, Circuit Judges.

Amin Mohammed petitions this Court to review the Board of Immigration

Appeal's ("BIA's") dismissal of his appeal from the immigration judge's ("IJ's")

removal order. Mohammed argues: (1) the IJ lacked jurisdiction over his I-751

application; (2) the IJ erred by relying on fundamentally unfair hearsay evidence;

---

    [*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

    [**]    The Honorable Bobby R. Baldock, United States Circuit Judge for the
U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

and (3) the IJ's decision was not supported by substantial evidence.  We hold the IJ properly exercised jurisdiction over Mohammed's I-751 application.  We further conclude that, even if we exclude the allegedly inadmissible hearsay evidence, the IJ's decision is supported by substantial evidence.  Accordingly, we exercise jurisdiction under 8 U.S.C. §§ 1252(a)(1) and (5) (2012) and deny Mohammed's petition for review.

1.  Mohammed first argues that the BIA's decision in *In re Stowers* required the IJ to continue his removal proceedings until the U.S. Citizenship and Immigration Services ("USCIS") rendered a decision on his third Form I-751 petition.  *See In re Stowers*, 22 I. & N. Dec. 605 (BIA 1999).  In *In re Stowers*, the BIA held "where an alien is prima facie eligible for a waiver under [8 U.S.C. § 1186a(c)(4)] and wishes to have his or her waiver application adjudicated by the [USCIS], the proceedings should be continued in order to allow the [USCIS] to adjudicate the waiver application."  22 I. & N. Dec. at 613–14.  We review whether the BIA clearly departed from its own standards for an abuse of discretion.  *Mejia v. Sessions*, 868 F.3d 1118, 1121 (9th Cir. 2017).

The BIA did not abuse its discretion in rejecting Mohammed's argument.  First, the BIA noted that the IJ exercised jurisdiction over Mohammed's *second* I-751 application, which the USCIS had already denied, not his *third* petition, which was still pending.  Second, the BIA correctly concluded Mohammed failed to show

he was "prima facie eligible" for relief. The USCIS denied Mohammed's first and second I-751 petitions because Mohammed failed to establish that he married in good faith. Mohammed's third I-751 petition sought relief on the same ground, and so, the USCIS would likely deny the petition for the same reason. Therefore, Mohammed was not prima facie eligible for relief, and it was not an abuse of discretion for the BIA to affirm the IJ's decision to exercise jurisdiction in Mohammed's case without waiting for a third denial.

2. Mohammed further claims the IJ's decision was (1) based on fundamentally unfair hearsay evidence and (2) not supported by substantial evidence. We disagree. Even if we exclude the allegedly inadmissible hearsay evidence, the IJ's finding that Mohammed did not enter his marriage in good faith is supported by substantial evidence.[1]

In order to establish Mohammed's removability under 8 U.S.C. § 1227(a)(1)(G)(ii), the Department of Homeland Security ("DHS") bore the burden before the IJ to show that Mohammed entered his marriage for the purpose of evading U.S. immigration laws. *Nakamoto v. Ashcroft*, 363 F.3d 874, 882 (9th Cir. 2004) (citing 8 U.S.C. § 1229a(c)(3)(A)). The focus of the inquiry is whether

---

[1] Mohammed argues the IJ erred in considering Ms. Khan's bankruptcy petition, I-751 application, and N-400 application because the documents constitute fundamentally unfair hearsay. We do not decide this issue and exclude these documents from our consideration of whether the IJ's decision was supported by substantial evidence.

Mohammed and his wife "intended to establish a life together at the time they were married." *Id.* Whether Mohammed committed marriage fraud is "an intrinsically fact-specific question, which we review under the substantial evidence standard." *Id.* at 881. "Under this deferential standard, we must affirm the IJ's ruling unless the evidence is so compelling that no reasonable fact finder could fail to find the facts were as [Mohammed] alleged." *Id.* at 881–82. "[C]ombining the substantial evidence standard with the burden of proof," we must decide whether substantial evidence supports a finding by clear and convincing evidence that Mohammed committed marriage fraud. *Id.* at 882.

In this case, there is substantial evidence to support the IJ's determination that Mohammed committed marriage fraud. As an initial matter, the IJ found Mohammed was not credible based on his inconsistent statements that contradicted record evidence. And while Mohammed tried to downplay his relationship with his ex-wife to give the appearance of a genuine marriage to his new wife, the DHS presented substantial evidence showing Mohammed maintained a relationship with his ex-wife throughout his new marriage. This evidence includes the following.

First, it is undisputed Mohammed had sexual relations with his ex-wife, Mehrunnesa Khan, in 2005—within one month of his wedding to his new wife, Joanna Flores. This encounter resulted in the conception of Mohammed and Ms. Khan's third child. While Mohammed initially testified that he did not know Ms.

17-71638

Khan got pregnant until five years later, he subsequently conceded that he was present at the hospital for the child's birth.

Furthermore, overwhelming evidence suggests Mohammed's contact with Ms. Khan goes well beyond the encounter in 2005. For example, Mohammed and Ms. Khan traveled on the same flights to India in 2007 and in 2009. Mohammed and Ms. Khan's 2007 trip lasted three months, and yet, Ms. Flores did not accompany Mohammed on that trip. Ms. Flores similarly did not travel with Mohammed in 2009. Additionally, Ms. Kahn's bank statements and utility bills show she lived in the same apartment in 2005 and 2006 that served as Mohammed and Ms. Flores's home in 2007. This evidence demonstrates Mohammed maintained significant contact with his ex-wife throughout his new marriage.

And finally, Mohammed and Ms. Flores's marriage lasted only five years. The couple separated in 2009, and their divorce was final in 2010. *See Nakamoto*, 363 F.3d at 882 (recognizing that "evidence that the parties separated after the marriage is relevant to ascertaining whether they intended to establish a life together"). In sum, substantial evidence supports the IJ's finding that Mohammed did not marry Ms. Flores with the intent of establishing a life with her.

Mohammed's petition for review is DENIED.

17-71638